112 So.2d 257 (1959)
STATE of Florida, Appellant,
v.
Anna A. SCHROEDER, Appellee.
Supreme Court of Florida.
April 29, 1959.
Rehearing Denied June 9, 1959.
Richard W. Ervin, Atty. Gen., and Irving B. Levenson, Asst. Atty. Gen., for appellant.
Milton M. Ferrell, Miami, for appellee.
O'CONNELL, Justice.
The State appeals from an order quashing an indictment charging the defendant, Anna A. Schroeder, with the crime of murder in the first degree for the killing of her husband.
Defendant, on the morning of January 5, 1957, went to the office of her attorney, Mr. Henry Oppenborn, and conferred with him for some time, after which Mr. Oppenborn advised a Justice of the Peace of the *258 death of Mr. Schroeder. During the conference between defendant and Mr. Oppenborn, Mr. Paul Ropes, an attorney who shared offices but who was not a partner of Mr. Oppenborn, entered into the conference. It is not clear whether Mr. Ropes and defendant were in the relationship of attorney and client, but the trial court in granting the motion to quash concerned in this appeal found that both Mr. Oppenborn and Mr. Ropes were attorneys for the defendant and we will not disturb this finding.
Subsequently both Mr. Ropes and Mr. Oppenborn were subpoenaed to appear at the office of the State Attorney for questioning in regard to the death of defendant's husband. When these attorneys presented themselves for questioning, Mr. Ferrell, an attorney also representing the defendant's objected to their being interrogated on the ground that such would "constitute a violation of the rights accorded Mrs. Schroeder under the law." He further informed the State Attorneys who conducted the questioning that in his opinion, if such questioning elicited any information which had come into the possession of the two attorneys through their attorney-client relationship with the defendant, it would give defendant immunity from prosecution for such crime. Nevertheless, both attorneys were questioned.
Subsequently, Mr. Oppenborn was subpoenaed to appear and testify before the Dade County Grand Jury regarding the killing of defendant's husband. He responded and did testify. Thereafter the grand jury returned the indictment involved herein.
Defendant by order of the trial court required the State to produce copies of the interrogation of both Mr. Oppenborn and Mr. Ropes as conducted by the State Attorney and of Mr. Oppenborn before the grand jury. Defendant then moved the trial court to quash the indictment, copies of the interrogation being attached to the motion, on the ground that the interrogation of her attorneys had compelled her, in a criminal case, to be a witness against herself in violation of her constitutional rights. Sec. 12, Decl.Rights, Fla. Const., F.S.A., citing the case of State ex rel. Hemmings v. Coleman, 1939, 137 Fla. 80, 187 So. 793.
The court entered its order quashing the indictment. It found that defendant's counsel were subpoenaed and required to divulge privileged information; such privilege being personal, could be waived only by the client; and the State, as a matter of law, in eliciting information from defendant's counsel was in the same position as if it had subpoenaed and elicited the information from the defendant herself. The court commented that the State cannot do indirectly what it cannot do directly and to allow such would play havoc with the relationship of attorney and client and let the doors wide open to destruction of the constitutional provisions of protection against self-incrimination. The court concluded:
"In reaching the conclusion that the indictment is invalid, it is unnecessary to decide whether the self-incriminatory evidence, immunizes the defendant against prosecution for the crime alleged or merely that the indictment was based upon illegal evidence. In either event, the indictment should be quashed. If the defendant is again indicted without relying upon self-incrimination a challenge to the indictment will necessarily be limited to the question of whether the defendant was immunized by reason of such evidence."
The indictment was quashed without prejudice against the State to resubmit the case to a grand jury.
The trial court denied a petition for rehearing and the State filed its notice of appeal.
Thereafter the State obtained a second indictment from the grand jury. Defendant then moved this Court to dismiss the *259 appeal on the ground that no right of appeal existed from the order quashing since the State had obtained a new indictment. The State then filed with this Court a supplemental pleading showing that the trial court had quashed the second indictment on the ground that defendant should not be required to defend this appeal and prosecution on the second indictment, simultaneously. This Court denied the motion to dismiss this appeal.
The State raises two points for decision by us. The first questions whether a defendant in a criminal proceeding can avail herself of the constitutional guarantee against self-incrimination as a ground to quash an indictment when the defendant's attorney, and not the defendant herself, testifies before investigating authorities and the grand jury which returned the indictment. The second question is whether a person acquires immunity from criminal prosecution by reason of such testimony by her attorneys, she not testifying personally.
On appeal the defendant does not meet the questions raised by the State. Instead she again argues that the order quashing the indictment is not a final order since the order was without prejudice against the State's right to again submit the case to a grand jury and the State did so.
This Court, by denying the defendant's motion to dismiss this appeal has already determined this contention adversely to the defendant. Sec. 924.07(1), F.S.A. authorized the State to appeal an order quashing an indictment or information, or any count thereof. This right to appeal such an order is unconditional and cannot be impaired by the trial court making the order without prejudice to the matter being resubmitted to the grand jury. The order of quashal involved here is an appealable order. See People v. Bink, 1912, 151 App.Div. 271, 135 N.Y.S. 733.
The second indictment having been quashed it is unnecessary to determine whether the defendant could be required to defend this appeal and a subsequent indictment, simultaneously.
Defendant also contends that, assuming the order quashing to be appealable, the State's questions cannot be considered by this Court since they were not decided by the lower court. This contention is unsound.
While the trial court did not specify whether the order quashing was based upon the alleged self-incrimination or upon immunity from prosecution by reason thereof, it clearly stated that either would be sufficient ground for quashing the indictment. It is obvious that both grounds were urged by the defendant and considered by the court. In order to avoid piecemeal disposition of this cause we must and should consider both of these grounds now. We conclude that the State's questions are properly before us.
In support of its first point on appeal the State urges that this Court has adopted the rule that a court for the purpose of quashing an indictment will never inquire into the sufficiency, legality or character of the evidence that influenced a grand jury in finding such indictment. Mercer v. State, 1898, 40 Fla. 216, 24 So. 154; Richardson v. State, 1930, 100 Fla. 835, 130 So. 718. Also cited are Prevatt v. State, 1938, 135 Fla. 226, 184 So. 860, and Johnson v. State, 1946, 157 Fla. 685, 27 So.2d 276, certiorari denied 329 U.S. 799, 67 S.Ct. 491, 91 L.Ed. 683. Therefore, says the State, the trial court erred in the first instance by considering the legality of the evidence.
This Court, in Richardson v. State, supra, 130 So. at page 720 stated:
"Nothing is contained in either the Constitution or statutes requiring evidence to be submitted before the grand jury as a prerequisite to a valid presentment or indictment * * * charging him with the commission of a capital *260 crime. The rule has been adopted in this state that a court for the purpose of quashing an indictment will never inquire into the character of the evidence that influenced a grand jury in finding such indictment. See Mercer v. State, 40 Fla. 216, 24 So. 154, 155, 74 Am.St.Rep. 135." (Emphasis ours.)
This Court ruled, in Prevatt v. State, supra, that the sufficiency of the evidence presented to the county solicitor as the basis for an information is a matter of which the county solicitor must be the "sole and final" judge and as to which neither the defendant nor the court may inquire. We said, 184 So. on page 864:
"This must be true, else in all cases the State would first be put to trial of a plea in abatement and then to a trial on the merits."
And, in Johnson v. State, supra, 27 So.2d on page 281, we said, referring to our holding in the abovementioned two cases:
"To hold otherwise would result in the absurdity of allowing a defendant to have a jury trial first on the question of the legality and sufficiency of the evidence to constitute the basis for the charge and then another jury trial to determine the legality and sufficiency * * * of the charge so made. * * *" (Emphasis ours.)
In the Johnson case it was contended by the defendant in his motion to quash that, among other things, the evidence upon which the information was based was obtained illegally and in contravention of his constitutional rights, being obtained under an unlawful search of his house.
In the trial court the defendant, in support of her motion to quash, cited the case of State ex rel. Hemmings v. Coleman, 187 So. 793, supra. The trial court also cited this case in support of its order quashing the indictment.
Contrary to the contention of the defendant and to the construction placed thereon by the trial court, the last cited case does not hold either that an indictment rendered by a grand jury before whom the accused was compelled to testify is subject to quashal because of a violation of the constitutional protection against self-incrimination or that the accused is thereby immunized from prosecution.
In the Coleman case the question before the Court as stated at page 795 in 187 So. was:
"* * * then the question left for our determination is, whether or not when embezzlement is the subject matter of an investigation by a grand jury, may one accused of such embezzlement, or under investigation as a suspect of the crime of embezzlement, be lawfully required to appear and testify before the grand jury in regard to such alleged embezzlement?"
The Court properly answered this question in the negative and then proceeded in the first opinion on page 798 in 187 So. to hold that because he could not lawfully be required to depose and testify as to such embezzlement before the grand jury,
"* * * Therefore, the evidence given by him or statements made by him, before the grand jury concerning the matter then being investigated, cannot be used as a basis for a prosecution for the crime of perjury."
It is true that in the Coleman case this Court, in reaching the conclusion in the first opinion that the defendant was not lawfully required to depose and testify, cited cases in other jurisdictions which seem to hold that where one is so compelled to testify against himself before a grand jury an indictment against him is subject to a motion to quash, but we are not bound by such cases and do not follow them.
We therefore conclude that the case of State ex rel. Hemmings v. Coleman, supra, is not in conflict with the above cited cases of this court which hold that for *261 the purpose of determining a motion to quash a court will not inquire into the character, sufficiency, or legality of the evidence upon which an indictment or information is based. We also conclude that it does not hold that any immunity from prosecution is afforded an individual by reason of his being required to testify before a grand jury concerning a matter for which the individual is subsequently indicted.
We have also considered the case of State ex rel. Byer v. Willard, Fla. 1951, 54 So.2d 179 for possible conflict with the cases which hold that a court will not on a motion to quash inquire into the legality, sufficiency or character of the evidence upon which an information or indictment is based. We find no conflict. The Willard case was one in prohibition. The information involved a charge of gambling, one of the crimes for which immunity may be granted by statute. § 932.29, F.S.A. That case holds that where the lawful records of one are used against him without his consent in a grand jury investigation of gambling it is tantamount to requiring him to testify in a criminal proceeding or investigation so as to immunize him from prosecution under the statute above-mentioned.
We therefore conclude that it is still the law of this State that a court will not, for the purpose of determining a motion to quash, consider the legality, character, or sufficiency of the evidence upon which an indictment or information is based.
Having reached this conclusion, it is unnecessary to determine whether the compelling of the defendant's attorneys to testify before the grand jury and before the state attorney did in fact constitute a violation of the defendant's constitutional right against self-incrimination.
However, we do pause to say emphatically that neither this Court nor public policy favors either a prosecuting officer or grand jury calling as a witness an attorney for one under investigation for commission of a crime, or an attorney testifying regarding any confidential communications had with his client, if so called. Public policy abhors both actions, and the canons of ethics prohibit the attorney so testifying except with express consent of his client.
We also take care to point out that we are not called upon to and we do not decide any question relating to the admissibility at a trial of evidence obtained, either directly or indirectly, as a result of a person, subsequently accused of crime, being unlawfully compelled to testify before a grand jury or prosecuting official investigating such crime.
The question of immunity from prosecution mentioned in the trial court's order quashing the indictment is easily decided.
Immunity from prosecution is a creature of statute (§ 932.29, F.S.A.) and murder is not one of the crimes enumerated therein. Therefore even had the defendant been personally compelled to testify before the grand jury or before the state attorney, no immunity would have resulted in this case.
For the reasons above expressed the order quashing the indictment is reversed and this cause remanded for further proceedings consistent with this opinion.
TERRELL, C.J., and DREW and THORNAL, JJ., concur.
HOBSON, J., dissents.
HOBSON, Justice (dissenting).
I am impelled, albeit respectfully, to dissent from the judgment and that portion of the majority opinion which fails to give the appellee the benefit of the protection accorded and accused by our constitutional provisions against self-incrimination. Section *262 12 of the Declaration of Rights provides that "No person shall be * * * compelled in any criminal case to be a witness against himself * * *."
It is well recognized that investigations before a grand jury are "criminal cases" to which the privilege against self-incrimination applies.[1]
Where the defendant has been compelled to testify before a grand jury in violation of his constitutional privilege against self-incrimination many courts have invalidated the indictment.[2]
In State ex rel. Hemmings v. Coleman, 1939, 137 Fla. 80, 187 So. 793, 797, we said:
"`It is intolerable that one whose conduct is being investigated for the purpose of fixing on him a criminal charge should, in view of our constitutional mandate, be summoned to testify against himself, and furnish evidence upon which he may be indicted. It is a plain violation both of the letter and the spirit of our organic law.'" (State v. Faulkner, 175 Mo. 546, 611, 75 S.W. 116.)
Furthermore, I believe the case of State ex rel. Byer v. Willard, Fla. 1951, 54 So.2d 179 is in conflict with the holding of the majority in the instant case. In the Willard case we held that the requirement of one suspected of crime, that he produce his books and records before the grand jury for its examination, was tantamount to such suspect testifying against himself.
In the instant case, two of the appellee's attorneys were called before the State's Attorney and one of said attorneys was subpoenaed to appear before the grand jury and required to give testimony against the appellee in connection with the crime for which she was subsequently indicted. The only information which they had concerning the crime was related to them by their client, the appellee.
The only difference between the Willard case and the instant case is that in the one situation the accused has testified against himself by something which he placed in writing, whereas in the situation now before us, the accused, in my judgment, testified against herself through her own verbal statements to her attorneys. The dissimilarity between a written statement by the accused and a verbal statement amounts to a distinction without a difference. The confidential character of disclosures made to one's attorney does not, to my mind, permit a logical distinction.
In addition, I can see no room for the application of the ruling which we have made in some of our cases to the effect that the character of the evidence that influenced a grand jury in finding an indictment cannot be inquired into by the courts for the purpose of quashing an indictment to this case which involves the violation of appellee's constitutional right against self-incrimination.
I do not believe that it was necessary for the trial court to inquire into the "character" of the evidence that influenced the grand jury in finding the indictment in order to rule upon the motion to quash. The record indicates very clearly that there was no contention by the State that the attorneys for the appellee did not gain their only information concerning the crime from the appellee, their client, and had not been subpoenaed before the State's Attorney and one of them before the grand jury in connection with the investigation of the crime for which appellee was later indicted. Consequently, the character or sufficiency of the testimony given by the attorneys was never an issue and no inquiry *263 into the character of the evidence was made or required. It was simply a question of applying or of failing to apply our constitutional protection against self-incrimination to the admitted facts.
The grand jury was intended to be a safeguard and was designed to protect the reputation of the accused, and to avert the stigma of unwarranted prosecution. The majority opinion ignores these ends when it forces the accused to submit to trial even though the indictment was returned substantially upon evidence obtained in violation of constitutional rights.
I would affirm the order of the trial judge which granted the motion to quash the indictment.
NOTES
[1] State ex rel. Hemmings v. Coleman, 1939, 137 Fla. 80, 187 So. 793; Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110; Commonwealth v. Rhine, Ky., 303 S.W.2d 301; People v. Dudish, 5 Misc.2d 856, 166 N.Y.S.2d 810.
[2] See cases cited in 38 A.L.R.2d 229-317, and § 3.